**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:18-CV-00189-GCM**

| | |
|---|---|
| **JAMES C. MCNEILL,** | |
| **Plaintiffs,** | |
| **v.** | **ORDER** |
| **MICHAEL D. HINSON,**<br>**FNU SIMMONS,**<br>**WILLIAM HORNE,**<br>**FNU KINNEY,**<br>**FNU ALLEN,**<br>**THOMAS B. TURGEON,** | |
| **Defendants.** | |

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Writs and Subpoenas (ECF No. 87), on oral motions made by the Plaintiff for the same at a telephonic conference held on January 3, 2022, and on a second written motion received after the conference, styled "Final Request for Subpoenas and Writs" (ECF No. 90).

## I.  BACKGROUND

This is a prisoner civil rights suit set for trial on February 14, 2022.[1] Plaintiff James C. McNeill claims that he was mistreated by guards at Lanesboro Correctional Institution. According to McNeill, guards violated his First Amendment rights by refusing to distribute his legal mail. After a verbal altercation ensued over the mail, the guards allegedly attacked McNeill and an

---

[1] Trial has been repeatedly continued in this case. It was initially set for September 13, 2021 before another judge. It was transferred to the undersigned, and reset for trial for November 1, 2021. Then it was continued on the eve of trial when counsel for Defendants began exhibiting symptoms consistent with COVID-19. It was reset for January 10, 2022. However, the delayed arrival of McNeill's motions for writs and subpoenas caused the Court to again continue the trial to the current date.

employee at the prison who interceded on his behalf. McNeill claims that the guards pepper-sprayed him, slammed him against the wall, twisted his arms and wrist, and struck him repeatedly in contravention of the Eighth Amendment right to be free from excessive force.

By a written motion docketed on December 16, Plaintiff James McNeill sought writs of habeas corpus ad testificandum for Dellery Moore, Jessie Lee Grooms, Charles Hinnett, and Eddie Ellis. At a telephonic conference on January 3, 2022, McNeill requested three more inmate-witnesses: Dontez Simuel, Cedric Bethea, and Lorenzo Pope.[2] Each individual, according to McNeill, was an eyewitness to the events at issue in this case.

McNeill also sought subpoenas for non-incarcerated witnesses in his written motion. Specifically, he requested subpoenas for (1) Dr. Mann, a contract physician for the state Department of Public Safety (DPS); (2) Lieutenant Darrick Philemon; (3) Sergeant Raven Mack; and (4) Barbara Vines.[3] At the telephonic conference, McNeill orally requested a subpoena for one Officer Lankford. Counsel for the Defendants stated that Barbara Vines is deceased, and that neither Dr. Mann nor Sergeant Mack is presently employed by DPS.[4]

At the behest of the Court, counsel for the Defendants attempted to identify and locate each of the prisoners identified by McNeill. Three individuals were found: (1) Dontez Simuel, an inmate at Bertie Correctional Institution; (2) Jessie Lee Groom, an inmate at Scotland Correctional

---

[2] McNeill also requested the presence of these individuals by a written motion filed on December 29, 2021. *See* ECF No. 90. The motion was not received or docketed until after the conference. *See id.*; *Lewis v. Richmond City Dep't*, 947 F.2d 733, 735 (4th Cir. 1991) (explaining that inmate pleadings are filed when they are given to the prison authorities for mailing). Because McNeill orally requested the same witnesses on January 3, the Court will deny his second written motion as moot.

[3] McNeill proffered that Dr. Mann, Sergeant Mack, and Barbara Vines had first-hand knowledge of the events at issue. Lieutenant Philemon is alleged to have investigated the incident.

[4] Following the conference, counsel for Defendants investigated the status of Officer Lankford. There were three former DPS employees by that name; none were female as identified by McNeill.

Institution; and (3) Eddie Ellis, an inmate at Alexander Correctional Institution. Three others could not be located using the identifying information provided by McNeill. The only Cedric Bethea that could be found was released in 1997. An inmate named Lorenzo Pope had briefly been incarcerated at Lanesboro Correctional Institution, but had never overlapped with McNeill. There was no inmate by the name of Charles Hinnett. Finally, one inmate, Dellery Moore, had been released.

## II.    DISCUSSION

McNeill seeks witnesses for trial by means of two instruments: the writ of habeas corpus ad testificandum for incarcerated witnesses, and the subpoena for non-incarcerated witnesses.

### a.  Writs of Habeas Corpus Ad Testificandum

When a party seeks the in-person testimony of an incarcerated witness, the writ of habeas corpus ad testificandum serves as the "normal substitute for a subpoena." *Draper v. Rosario*, 836 F.3d 1072, 1081 (9th Cir. 2016). The decision to grant a writ of habeas corpus ad testificandum rests in the discretion of the trial court. *United States v. Jackson*, 757 F.2d 1486, 1492 (4th Cir. 1985). The Fourth Circuit has suggested that three factors are relevant in granting a testimonial writ:

> (1) Whether the prisoner's presence will substantially further the resolution of the case, and whether alternative ways of proceeding, such as trial on depositions, offer an acceptable alternative.
>
> (2) The expense and potential security risk entailed in transporting and holding the prisoner in custody for the duration of the trial.
>
> (3) The likelihood that a stay pending the prisoner's release will prejudice his opportunity to present his claim, or the defendant's right to a speedy resolution of the claim.

*Muhammad v. Warden, Baltimore City Jail*, 849 F.2d 107, 113 (4th Cir. 1988); *see also Peyton v. Clark*, Case No. 7:12CV00481, 2014 U.S. Dist. LEXIS 171281, at *3–4 (W.D. Va. Dec. 11, 2014) (applying the *Muhammad* factors in the context of a non-party inmate).

The Court will deny the petition for writs in its entirety. Bethea, Pope, Hinnett, and Moore either cannot be located using the information provided by McNeill, or are not in state custody. As for Simuel, Groom, and Ellis, the *Muhammad* factors counsel against issuance of the writs. The Court will separately issue orders that those three witnesses testify via live video conferencing in lieu of appearing in open court.

Starting with the first *Muhammad* factor, the presence of Simuel, Groom, and Ellis is likely to further the resolution of the case. McNeill alleges one version of events; Defendants recall another. The testimony of those three eyewitnesses will assist the jury in determining the truth of the matter. That said, live testimony by audio or visual means will constitute an "acceptable alternative" to issuance of the writs, as the Court explains later.

Next, there is significant expense and security risk involved in transporting these prisoners to Charlotte for a multi-day trial. Dontez Simuel is located at Bertie Correctional Institution, which is approximately 287 miles from the courthouse by the fastest route. Jessie Lee Groom is housed at Scotland Correctional Institution, some 103 miles away. Eddie Ellis is incarcerated in Alexander Correctional Institution, 63 miles from the federal courthouse.[5] Two state prison guards would have to accompany each prisoner to Charlotte, and would be responsible for guarding the prisoners throughout the duration of the trial. *See* ECF No. 89 at 1–2 (informing the warden of Alexander Correctional Institution that the U.S. Marshal is not responsible for ensuring the safe and secure conduct of state prisoners).

---

[5] McNeill is also located at Alexander Correctional Institution. Because a writ has already been issued for McNeill to attend his own trial, the marginal costs associated with transporting Ellis are likely insignificant. However, the security considerations are the same, if not weightier, in Ellis' case, given the need to guard multiple prisoners at once.

In reaching this conclusion, the Court is mindful of the extreme strain imposed by the COVID-19 pandemic on state prison officials. The pandemic presents multiple additional challenges to live testimony. First, ordering transportation of the prisoners would deprive the host facilities of guards at a time when the prison authorities are hard-pressed for personnel. Second, the unnecessary transportation of prisoners presents heightened public health risks to jurors, court personnel, and other inmates. *See* Centers for Disease Control and Prevention, *For People Living in Prisons and Jails*, https://www.cdc.gov/coronavirus/2019-ncov/downloads/needs-extra-precautions/For-People-Living-in-Prisons-and-Jails.pdf (November 8, 2021) (explaining that jails and prisons involve higher risk for COVID-19). In sum, the second factor weighs heavily against the issuance of writs.

Finally, the Court briefly considers the third *Muhammad* factor. It is likely not applicable in cases like this one, where the writ sought is for an inmate-witness and not an inmate-plaintiff. *See Peyton*, 2014 U.S. Dist. LEXIS 171281, at *4; *Muhammad*, 849 F.2d at 113 (outlining standards for securing imprisoned plaintiffs' attendance). In any event, it is neither practical nor just to stay the entire case to await the release of these three witnesses (one of whom is serving a life sentence). The Court finds that this factor is inconclusive.

The Court acknowledges Plaintiff's preference that the witnesses testify in person. Indeed, in-person testimony is the default rule under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 43(a). However, "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." *Id*. Compelling circumstances exist here. As discussed earlier, the need to avoid unduly burdening prison authorities and to protect the safety of the proceedings prompts the Court to utilize alternative procedures under Rule 43(a).

The Court is satisfied that "appropriate safeguards" will be in place. McNeill will be physically present for trial, and will have the same ability to see and hear his witnesses as everyone else in the courtroom. Jurors will be able to assess the witness' credibility by observing facial expressions and listening to the timbre of the witness' responses. And both parties will have the ability to conduct direct and cross examinations. *See Jennings v. Bradley*, 419 F. App'x 594, 598 (6th Cir. 2011). To avoid potential technological issues, the Court will order that the Clerk's office conduct tech rehearsals with representatives from each involved facility before the date of trial. Finally, the Court will give a jury instruction explaining that video testimony and in-person testimony is subject to equal consideration. *See Allen v. Wine*, 297 F. App'x 524, 533 (7th Cir. 2008).

Separate orders will issue directing the warden of each involved facility to make Simuel, Groom, and Ellis available for testimony by videoconferencing.

### b. Subpoenas

The Court now turns to McNeill's requests for subpoenas. In order for the Court to issue subpoenas on behalf of an incarcerated plaintiff, the plaintiff must (1) provide adequate information about each witness, such that the Court may conclude that the subpoenas are being issued for relevant and permissible purposes; (2) identify those witnesses by name and address so that they can be located and served; and (3) demonstrate that he can pay the costs of securing those witnesses' attendance at trial. See Fed. R. Civ. P. 45(b)(1) (requiring fees and mileage for the issuance of subpoenas); 28 U.S.C. § 1821(f) (witness fees do not apply to incarcerated witnesses); *Pickens v. Lewis*, No. 1:15-cv-275-FDW, 2017 WL 2198342, at *2 (W.D.N.C. May 18, 2017) ("Ordinarily, the plaintiff must bear the costs of his litigation . . . even in pro se cases.").

McNeill seeks subpoenas for five individuals: Dr. John Mann, Lieutenant Darrick Philemon, Officer Lankford, Sergeant Raven Mack, and Barbara Vines. The Court will deny the motion for subpoenas as to Dr. Mann, Officer Lankford, Sergeant Mack, and Ms. Vines. The location of Officer Mann and Sergeant Mack is insufficiently clear for the Court to issue subpoenas. The Court will not, in its discretion, cause the U.S. Marshals Service to expend resources in developing that information. Officer Lankford cannot be identified using the information given by McNeill. Finally, Ms. Vines is deceased.

The Court will subpoena Lieutenant Philemon. The Court finds that he is readily subject to service, and his testimony serves relevant and permissible purposes. McNeill has not demonstrated an ability to pay for Lieutenant Philemon's witness costs.[6] However, it does not appear that any costs will be associated with his testimony because the Court will order that Philemon testify by virtual means. The use of virtual testimony under Rule 43(a) for Philemon is warranted by the same grounds discussed earlier. The court will employ the same safeguards for Philemon's testimony as it will with the prisoners' virtual testimony.

## III.     ORDER

**IT IS THEREFORE ORDERED** that:

1. The Motion for Writs and Subpoenas (ECF No. 87) and the oral motion for the same, is **DENIED IN PART** and **GRANTED IN PART** as stated in this Order.

2. The Final Request for Writs and Subpoenas (ECF No. 90) is **DENIED AS MOOT**.

3. No later than January 21, 2022, counsel for Defendants shall **PROVIDE A POINT OF CONTACT** from Bertie Correctional Institution, Scotland Correctional Institution,

---

[6] At one point in the conference, McNeill averred that he was willing to pay, but did not show that he possessed the means to do so.

and Alexander Correctional Institution, to be responsible for testing and troubleshooting video conferencing technology with the Clerk's Office. Counsel for Defendants shall further **PROVIDE CONTACT INFORMATION** for Lieutenant Philemon in order to do the same.

4.  The Clerk is directed to **CONDUCT TECHNOLOGICAL REHEARSALS** with the facilities' points of contact and Lieutenant Philemon. Rehearsals should be completed no later than February 8, 2022.

5.  The United States Marshals Service is directed to **SERVE A SUBPOENA** to appear and testify at trial on Lieutenant Darrick Philemon.

**SO ORDERED**.

Signed: January 13, 2022

Graham C. Mullen
United States District Judge